IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARK D. CASHIO AND ) | |
| KIMBERLY W. CASHIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **Civil Action No:** |
| 3M COMPANY, ) | |
| AVCO CORPORATION and its ) | **JURY TRIAL DEMANDED** |
| Division LYCOMING ENGINES ) | |
| BELL HELICOPTER TEXTRON INC. ) | |
| CBS CORPORATION ) | |
| CYTEC INDUSTRIES, INC. ) | |
| (Individually and as Successor-In- ) | |
| Interest to Advanced Composites ) | |
| Group and American Cyanamid ) | |
| Company) ) | |
| DANA COMPANIES, LLC ) | |
| EATON CORPORATION ) | |
| (Individually and as Successor-In- ) | |
| Interest to Cutler Hammer, Inc. and ) | |
| Eaton Aeroquip, Inc.) ) | |
| GENERAL DYNAMICS ) | |
| CORPORATION (Individually and as ) | |
| Successor-In-Interest to Convair Corp.) ) | |
| GENERAL ELECTRIC COMPANY ) | |
| GENUINE PARTS COMPANY ) | |
| GEORGIA-PACIFIC LLC ) | |
| GOODRICH CORPORATION ) | |
| GOODYEAR TIRE & RUBBER ) | |
| COMPANY (Individually and as ) | |
| Successor-In-Interest to Goodyear ) | |
| Aerospace Corp.) ) | |
| HARCO LLC (f/k/a Harco ) | |
| Laboratories, Inc.) ) | |
| HENKEL CORPORATION ) | |
| (Individually and as Successor-In- ) | |
| Interest to Dexter Corporation and ) | |
| Dexter Hysol Aerospace, LLC) ) | |
| HONEYWELL INTERNATIONAL, ) | |
| INC. ) | |
| HONEYWELL, INC. ) | |
| IMO INDUSTRIES, INC. (Individually ) | |

| | |
|---|---|
| and as Successor-In-Interest to Adel Fasteners). | ) ) |
| LOCKHEED MARTIN CORPORATION | ) ) |
| METLIFE, INC. | ) |
| NORTHROP GRUMMAN CORP., (Individually and as Successor-In-Interest to Ling-Temco-Vought) | ) ) ) ) |
| NOVARTIS CORPORATION (Individually and as Successor-In-Interest to Ciba-Geigy Corporation) | ) ) ) ) |
| PARKER HANNIFAN CORPORATION (Individually and as Individually and as Successor-In-Interest to Cleveland Wheels & Brakes, f/k/a Cleveland Aircraft Products) | ) ) ) ) ) ) |
| ROCKWELL AUTOMATION, INC. (Individually and as Successor-In-Interest to Allen Bradley Company, Inc. and Rostone Corporation) | ) ) ) ) ) |
| SCHNEIDER ELECTRIC USA, INC. (Individually and as Successor-In-Interest to Square D Company | ) ) ) ) |
| THE BOEING COMPANY | ) |
| TRANSDIGM GROUP, INC. and its Division ADEL WIGGINS GROUP (Individually and as Successor-In-Interest to Adel Precision Products Corp.) | ) ) ) ) ) |
| UNION CARBIDE CORPORATION | ) |
| UNITED TECHNOLOGIES CORP., and its Division PRATT & WHITNEY, | |

Defendants.

## COMPLAINT

Plaintiffs, Mark Cashio and Kimberly W. Cashio, complain of the defendants as follows:

## PARTIES

1. Jurisdiction is based on diversity-of-citizenship and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2.	The Plaintiffs, Mark Cashio and Kimberly W. Cashio, are citizens of Davidson County, Tennessee.

3.	3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota.

4.	Avco Corporation, and its division Lycoming Engines, is a Delaware corporation with its principal place of business in Wilmington, Massachusetts.

5.	Bell Helicopter Textron Inc. is a Delaware Corporation with its principal place of business Providence, Rhode Island.

6.	CBS Corporation is a Delaware Corporation with its principal place of business in New York City, New York.

7.	Cytec Industries, Inc., Individually and as Successor-In-Interest to Advanced Composites Group and American Cyanamid Company, is a Delaware corporation with its principal place of business in Woodland Park, New Jersey.

8.	Dana Companies, LLC is a Virginia corporation with its principal place of business in Maumee, Ohio.

9.	Eaton Corporation, Individually and as Successor-In-Interest to Cutler Hammer, Inc. and Eaton Aeroquip, Inc., is an Ohio corporation with its principal place of business in Ohio.

10.	General Dynamics Corporation, Individually and as Successor-In-Interest to Convair Corp., is a Delaware Corporation with its principal place of business in Falls Church, Virginia.

11.	General Electric Company is a New York corporation with its principal place of business in Fairfield, Connecticut.

12. Genuine Parts Company is a Georgia Corporation with its principal place of business in Atlanta, Georgia.

13. Georgia-Pacific LLC is a Delaware corporation with its principal place of business in the Atlanta, Georgia.

14. Goodrich Corporation, f/k/a The B.F. Goodrich Company, is a New York corporation with its principal place of business in Charlotte, North Carolina.

15. Goodyear Tire & Rubber Company, Individually and as Successor-In-Interest to Goodyear Aerospace Corp., is an Ohio corporation with its principal place of business in Akron, Ohio.

16. Harco, LLC f/k/a Harco Laboratories, Inc. is a Connecticut corporation with its principal place of business in Branford, Connecticut.

17. Henkel Corporation, Individually and as Successor-In-Interest to Dexter Corporation and Dexter Hysol Aerospace, LLC, is a Delaware corporation with its principal place of business in Rocky Hill, Connecticut.

18. Honeywell International, Inc. is a Delaware corporation with its principal place of business in Morris Township, New Jersey.

19. Honeywell, Inc. is a Delaware corporation with its principal place of business in the State of New Jersey.

20. IMO Industries, Inc., Individually and as Successor-In-Interest to Adel Fasteners, is a Delaware corporation with its principal place of business in New Jersey.

21. Lockheed Martin Corporation is a Maryland corporation with its principal place of business in Bethesda, Maryland.

22. MetLife, Incorporated is a Delaware corporation with its principal place of business in New York City, New York.

23. Northrop Grumman Corporation, Individually and as Successor-In-Interest to Ling-Temco-Vought, is a Delaware corporation with its principal place of business in Falls Church, Virginia.

24. Novartis Corporation, f/k/a Ciba-Geigy Corporation, is a New York corporation with its principal place of business in East Hanover, New Jersey.

25. Parker Hannifan Corporation, Individually and as Successor-In-Interest to Cleveland Wheels & Brakes, f/k/a Cleveland Aircraft Products, is an Ohio corporation with its principal place of business in Cleveland, Ohio.

26. Rockwell Automation, Inc., Individually and as Successor-In-Interest to Allen Bradley Company, Inc. and Rostone Corporation, is a Delaware corporation with its principal place of business in Milwaukee, Wisconsin.

27. Schneider Electric USA, Inc., Individually and as Successor-In-Interest to Square D Company, is a Delaware corporation with its principal place of business in Palatine, Illinois.

28. The Boeing Company, Individually and as Successor-In-Interest to McDonnell Corporation, is a Delaware corporation with its principal place of business in Chicago, Illinois.

29. TransDigm Group, Inc. and its Division Adel Wiggins Group, Individually and as Successor-In-Interest to Adel Precision Products Corp., is a Delaware Corporation with its principal place of business in Cleveland, Ohio.

30. Union Carbide Corporation is a New York corporation with its principal place of business in Houston, Texas.

31. United Technologies Corporation, and its Division Pratt & Whitney, is a Delaware corporation with its principal place of business in Hartford, Connecticut.

32. Collectively, all Defendants named herein, except for MetLife, Incorporated, shall be referred to as the "Product Defendants."

33. In May 1977, Mark Cashio received his U.S. Air Force Commission through the Reserve Officers' Training Corps at Louisiana State University and was assigned to England Air Force Base in Alexandria, Louisiana, as a Squadron Section Commander and Executive Officer in the 23rd Tactical Fighter Wing. While at England Air Force Base, Mr. Cashio worked with and around asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants.

34. During the late 1960's, Mark Cashio resided with his Father while home remodeling work was done by his Father to their home in Metairie, Louisiana. During this home remodeling work, Mark Cashio was exposed to asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants.

35. During the 1960's and 1970's, Mark Cashio performed automotive repair work to his own personal motor vehicles and the motor vehicles of his family and friends. While doing this motor vehicle work, Mark Cashio worked with and around asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants.

36. Mark Cashio was diagnosed with malignant mesothelioma in August of 2014, resulting from his exposure to asbestos-containing products designed, manufactured, distributed, installed or sold by the Product Defendants.

## JURISDICTION AND VENUE

37. All of the allegations contained in the previous paragraphs are re-alleged herein.

38.     Venue is proper in the U.S. District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in Nashville, Tennessee.

39.     Jurisdiction is proper in the U.S. District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

40.     Plaintiffs' claims arise out of, or are incidental to, each Defendant's interstate, intrastate and/or international business ventures conducted in the United States, including Tennessee.

## NATURE OF THE CASE

41.     All of the allegations contained in the previous paragraphs are re-alleged herein.

42.     This is an action for injuries under the Tennessee Products Liability Act of 1978, Tenn. Code. Ann. § 29-28-101, *et. seq*.

43.     Defendant, MetLife, incorporated, is an insurance company which at all times pertinent hereto was doing business throughout the United States and the State of Tennessee.

44.     The Product Defendants are or were engaged in the business of designing, manufacturing, marketing, installing and/or selling asbestos-containing products throughout the United States and the State of Tennessee.

45.     From approximately 1977-1981, Mark Cashio served his country as a Squadron Section Commander and Executive Officer in the 23rd Tactical Fighter Wing stationed at England Air Force Base in Alexandria, Louisiana. While at England Air Force Base, Mr. Cashio worked with and around asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants. Mark Cashio worked with and around these asbestos-

containing products, which were used in their intended manner without significant change in the products' condition.  Mark Cashio was unaware of the dangerous properties of asbestos, and the Product Defendants failed to provide warnings and instructions as to proper methods of handling the products.

46. As a result of Mark Cashio's work with and around these asbestos-containing, he was exposed to respirable asbestos fibers.

47. The asbestos-containing products designed, manufactured, marketed and sold by the Product Defendants were unreasonably dangerous and defective, and the Product Defendants failed to warn Mark Cashio of this fact.

48. During the late 1960's, Mark Cashio resided with his Father while home remodeling work was done by his Father to their home in their Metairie, Louisiana.  During this home remodeling work, Mark Cashio was exposed to asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants.  Mark Cashio was in the direct vicinity of these asbestos-containing products, which were used in their intended manner without significant change in the products' condition.  Mark Cashio was unaware of the dangerous properties of asbestos, and the Product Defendants failed to provide warnings and instructions as to proper methods of handling the products.

49. As a result of Mark Cashio's exposure to these asbestos-containing products, he was exposed to respirable asbestos fibers.

50. The asbestos-containing products designed, manufactured, marketed and sold by the Product Defendants were unreasonably dangerous and defective, and the Product Defendants failed to warn Mark Cashio of this fact.

51. During the 1960's and 1970's, Mark Cashio performed automotive repair work to his own personal motor vehicles and the motor vehicles of his family and friends. While doing this motor vehicle work, Mark Cashio worked with and around asbestos-containing products manufactured, sold, supplied and distributed by the Product Defendants. Mark Cashio worked with and around these asbestos-containing products, which were used in their intended manner without significant change in the products' condition. Mark Cashio was unaware of the dangerous properties of asbestos, and the Product Defendants failed to provide warnings and instructions as to proper methods of handling the products.

52. As a result of Mark Cashio's work with and around these asbestos-containing, he was exposed to respirable asbestos fibers.

53. The asbestos-containing products designed, manufactured, marketed and sold by the Product Defendants were unreasonably dangerous and defective, and the Product Defendants failed to warn Mark Cashio of this fact.

54. Mark Cashio's exposure to and inhalation of respirable asbestos fibers from asbestos-containing products designed, manufactured, marketed and sold by the Product Defendants caused him to contract mesothelioma, a painful and debilitating cancer that will ultimately cause his death.

## CAUSES OF ACTION

### Count One: Negligence Against the Product Defendants

55. All of the allegations contained in the previous paragraphs are re-alleged herein.

56. The Product Defendants owed the general public, including Mark Cashio, the duty to design, test, market, install, manufacture and sell products that were not defective and/or unreasonably dangerous for use.

57. The Product Defendants breached this duty by designing, marketing, installing, manufacturing and/or selling their asbestos-containing products in a defective and/or unreasonably dangerous condition.

58. Plaintiff's injuries are the direct and proximate result of the negligence and/or gross negligence of the Product Defendants who designed, marketed, installed, manufactured, sold and/or put into the stream of commerce asbestos-containing products which they knew, or in the exercise of ordinary care should have known, were deadly, dangerous and highly harmful to Plaintiff's health and well-being.

59. The Product Defendants were negligent and/or grossly negligent in one, some, or all of the following respects, same being the proximate cause of Plaintiff's injuries:

    a. In failing to adequately test their respective asbestos-containing products before offering them for sale and use so that Plaintiff, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said products and thereby expose himself to the development of fatal injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other maladies as a result of such inhalation of the asbestos dust and fibers;

    b. In continuing to mine, mill, manufacture, sell and otherwise distribute asbestos-containing products when each Product Defendant knew at the time of said mining, milling, manufacture, sale and/or distribution of said products, that such products could cause injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other maladies to those persons exposed to said products;

    c. In failing to develop and utilize a substitute material to eliminate asbestos fibers in the asbestos-containing products manufactured, sold and distributed;

   d. In failing to utilize the available substitute materials for asbestos fibers in the products mined, milled, manufactured, sold and distributed;

### Count Two: Failure to Warn Against the Product Defendants

60. All of the allegations contained in the previous paragraphs are re-alleged herein.

61. The Product Defendants are liable to Plaintiffs for failure to warn Mark Cashio that their asbestos-containing products were in a defective condition and unreasonably dangerous, both at the time of the purchase/use of their asbestos-containing products, and after the date of said purchase/use.

62. It was not obvious or readily apparent to users and consumers of Product Defendants' asbestos-containing products, including Mark Cashio, that their products were in a defective condition and unreasonably dangerous.

63. The Product Defendants' failure to warn directly and proximately caused Mark Cashio's pain, suffering, injuries, loss and/or damages, and will ultimately cause his death, because each and every Product Defendant committed one ore more of the following acts or omissions:

   a. In failing to adequately warn Mark Cashio of the dangerous characteristics of its asbestos-containing products, in that each Product Defendant failed to warn Mark Cashio that he could develop fatal injuries including, but not limited to, asbestosis, lung cancer, mesothelioma and/or other maladies as a result of being exposed to asbestos emitted from each Product Defendants' products;

   b. In failing to place adequate warnings on the containers or surfaces of their asbestos-containing products to warn users of the dangers to one's health of coming in contact with these asbestos-containing products, and of the gravity of the risk and extent of danger that

Mark Cashio was exposing himself, or those in continuous close contact with him, to by working with or around and being exposed to these products;

   c. In failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing asbestos-containing products;

### Count Three: Strict Liability Against the Product Defendants

64. All of the allegations contained in the previous paragraphs are re-alleged herein.

65. The Product Defendants are strictly liable under T.C.A. §§ 29-28-101 *et. seq.*, because the Product Defendants manufactured, designed and placed into the stream of commerce an unreasonably dangerous and defective product (*i.e.,* asbestos-containing products).

66. The defective design and condition of the asbestos-containing products rendered them unreasonably dangerous and defective for their intended use, and the Product Defendants' asbestos-containing products were in this defective condition at the time they were designed by and left the hands of the Product Defendants. These asbestos-containing products left the control of the Product Defendants in an unreasonably dangerous condition and reached the hands of Mark Cashio and others working in the direct proximity of Mark Cashio without change, alteration, or abnormal use and were the proximate and producing cause of Plaintiff's injuries.

67. The Product Defendants knew their asbestos-containing products were dangerous but represented that they would safely do the job for which they were intended by placing them into the market.

68. Mark Cashio was unaware of the hazards and defects of the Product Defendants' asbestos-containing products that made them unsafe for purposes of work.

69. During the period Mark Cashio worked with or around the Product Defendants' asbestos-containing products, which ultimately led to Mark Cashio's exposure to respirable asbestos, Mark Cashio and others working in the direct proximity of Mark Cashio were utilizing these products in the manner in which they were intended by the Product Defendants.

70. The Product Defendants' asbestos-containing products were dangerous beyond the expectation of an ordinary consumer ("consumer expectation test").

71. In addition, a reasonably prudent manufacturer, assumed to know the products' dangerous condition, would not have marketed the asbestos-containing products ("prudent manufacturer test").

72. The Product Defendants' asbestos-containing products were unreasonably dangerous because they met the requirements of the "consumer expectation test." They were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to their characteristics. The ordinary consumer would not appreciate the condition of the products and risk of the injury.

73. The Product Defendants' asbestos-containing products were unreasonably dangerous under the "prudent manufacturer test." The condition of the asbestos-containing products was likely to cause an injury with the potential of causing death. The Product Defendants could have eliminated the unsafe character of these products without impairing their utility or economical feasibility. Furthermore, Plaintiff did not and should not have had any awareness that these products would cause the type of injury that he suffered.

74. Plaintiff further alleges that the Product Defendants knowingly sold and continued sale of these products knowing they were defectively designed.

### Count Four:  Misrepresentation Against the Product Defendants

75. All of the allegations contained in the previous paragraphs are re-alleged herein.

76. The Product Defendants represented to the public through advertising, labels and/or otherwise, that their asbestos-containing products were safe in their ordinary and foreseeable use.

77. The above representations of material facts concerning the character and/or quality of the Product Defendants' asbestos-containing products, i.e. their safety, were in fact, false.  The Product Defendants intended to induce Mark Cashio and others who worked with or around their products, whose work resulted in Plaintiff's exposure to and inhalation of asbestos fibers, to act in reliance upon the representations.

78. These products caused Mark Cashio physical harm.

79. Mark Cashio and others who worked with or around the Product Defendants' asbestos-containing products, whose work resulted in Mark Cashio's exposure to and inhalation of asbestos fibers, justifiably relied upon the Product Defendants' representations.  Plaintiff seeks recovery of damages for his injuries which resulted because of his reliance upon the Product Defendants' misrepresentation.  Plaintiff also seeks recovery of punitive damages to punish the Product Defendants for making such false representations of material fact and in order to deter others from engaging in similar misconduct in the future.

### Count Five: Conspiracy Against Defendant, Metropolitan Life Insurance Company

80. All of the allegations contained in the previous paragraphs are re-alleged herein.

81. Defendant, MetLife, Incorporated, through its Policyholders Service Bureau undertook duties owed by the Defendants to the Plaintiff by testing asbestos workers and conducting scientific studies related to asbestos exposure.

82. In undertaking these duties, MetLife, Incorporated knew, or in the exercise of reasonable diligence should have known, that it was providing testing service for the ultimate protection of third parties, including the Plaintiff.

83. In both conducting said tests and in publishing the alleged results thereof, MetLife, Incorporated failed to exercise reasonable care to conduct or publish timely complete, adequate and accurate tests concerning health effects of asbestos exposure.

84. MetLife, Incorporated also caused to be published intentionally false, misleading, inaccurate and deceptive information about the adverse health effects of asbestos exposure.

85. The Plaintiff unwittingly but justifiably relied upon the purported thoroughness of the tests and information disseminated by the MetLife, Incorporated, which published these test results and information in a leading medical journal.

86. As a direct and proximate result of the failures on the part of MetLife, Incorporated in conducting tests and publishing results thereof which were false, misleading, inaccurate, deceptive and untruthful, MetLife, Incorporated caused, encouraged and promoted the Plaintiff's asbestos exposure and caused and/or contributed to the injuries sustained by the Plaintiff as more fully described herein.

87. By reason of the foregoing, MetLife, Incorporated acted with reckless and wanton disregard for the welfare of the general public, including this Plaintiff.

88. By reason of the foregoing, the Plaintiffs, Mark Cashio and Kimberly W. Cashio, have been damaged by the acts of MetLife, Incorporated, and seek compensatory and punitive damages from MetLife, Incorporated.

## Count Six: Punitive Damages

89. All of the allegations contained in the previous paragraphs are re-alleged herein.

90. The Product Defendants and MetLife, Inc., consciously and deliberately engaged in malice and in reckless indifference toward the safety of consumers. The Product Defendants' unreasonably dangerous asbestos-containing products were both manufactured and materially misrepresented with malicious and reckless indifference to the safety of consumers, including Mark Cashio. MetLife, Incorporated, acted with reckless and wanton disregard for the welfare of the general public, including Mark Cashio.

## DAMAGES

91. As a direct and proximate result of the above-described actions or inactions of the Product Defendants and MetLife, Incorporated, Plaintiffs have sustained severe injuries and damages. Plaintiffs suffered injuries and damages as a direct and proximate result of all Defendants' acts. Plaintiffs seek compensatory damages in the amount of $5,000,000.00 and punitive damages in an amount of $10,000,000.00, plus costs and any other relief to which Plaintiff is entitled by law.

## RELIEF SOUGHT

92. WHEREFORE, Plaintiff prays for judgment against all Defendants, as follows:

   a) For damages to be determined by the jury, in an amount to adequately compensate Plaintiff for all the injuries and damages sustained;

   b) For all general and special damages caused by the alleged conduct of all Defendants;

   c) For punitive damages sufficient to punish the Product Defendants and MetLife, Inc., for their egregious conduct and to deter all Defendants and others from repeating such maliciously or recklessly indifferent conduct; and

   d) For the costs of litigating this case;

   e)  For all other relief which Plaintiff may be entitled to by Tennessee law, including attorneys' fees.

## JURY DEMAND

Plaintiff demands that all issues of fact in this case be tried before a jury.

               Respectfully Submitted,

               **MORGAN & MORGAN-NASHVILLE, PLLC**

Dated: April 24, 2015      /s/Kathryn E. Barnett
               Kathryn E. Barnett (BPR#15361)
               **MORGAN & MORGAN-NASHVILLE, PLLC**
               810 Broadway Suite 105
               Nashville, TN 37203
               Phone: (615) 490-0944
               kbarnett@forthepeople.com

               *Of Counsel*

               **MORGAN & MORGAN, PA**
               J. Dennis Weitzel (FL Bar No. 93652)
               Samuel D. Elswick (FL Bar No. 105108)
               20 N. Orange Avenue, 16th Floor
               Orlando, Florida 32801
               Telephone: (407) 420-1414
               Facsimile: (407) 841-9520

               *Counsel for Plaintiffs*